**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| WESLEY MARION, | ) | |
| | ) | CASE NO.   3:10-cv-00258 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff Wesley Marion ("Marion"), *pro se*, challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Marion's claim for a Period of Disability and Disability Insurance Benefits under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, *et seq*. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, this Court AFFIRMS the final decision of the Commissioner.

**I.  Procedural History**

On January 5, 2007, Marion filed an application for POD and DIB alleging a disability

onset date of July 5, 2005. His application was denied both initially and upon reconsideration. Marion timely requested an administrative hearing.

On April 7, 2009, an Administrative Law Judge ("ALJ") held a hearing during which Marion, represented by counsel, testified. On May 20, 2009, the ALJ found Marion was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II. Evidence

*Hearing Testimony*

Age forty-four at the time of his administrative hearing, Marion is a "younger" person under social security regulations. *See* 20 C.F.R. § 404.1563(c). Marion has a high school education and past relevant work as a factory laborer, a construction laborer, a brake mechanic, a sales person, and a security officer. (Tr. 13, 161.) At the hearing, Marion testified to the following:

- He is 5 feet and ten inches tall and weighs 200 pounds. He had recently lost fourteen pounds. (Tr. 22.)

- He has no difficulty driving short distances, but anything longer than an hour causes him problems. (Tr. 22.)

- He was diagnosed with scoliosis at age fifteen. (Tr. 24.) Later, however, his family doctor reviewed his x-rays and told him he did not see scoliosis. (Tr. 26.) One leg is 1.5 inches shorter than his other leg. (Tr. 24.)

- He fractured his right arm and, consequently, he cannot turn his right hand as well as his left one. (Tr. 33.)

- Gradually the pain in his right knee worsened and he started receiving injections. (Tr. 34.)

- His ankles swell significantly after prolonged sitting. He also experiences a burning sensation in his feet, which is precipitated by headaches and blurry vision. (Tr. 35-36.)

- He once had a blood clot form in his leg that traveled to his lung. He had a "green filter" surgically inserted to prevent that from recurring. (Tr. 36-37.)

- He has racing thoughts and difficulty sleeping. (Tr. 38.) He was prescribed Zoloft and Trazodone. *Id.*

- He no longer mows the lawn, cleans, or cooks. He relies on his fiancé to do "pretty much everything." (Tr. 39.)

- He can sit fifteen to twenty minutes at a time before needing to get up and move around. He can walk for one-third of a mile before needing to sit down. Standing in place is difficult, as he constantly has to change positions and shift his weight. (Tr. 40-41.)

- He was diagnosed with fibromyalgia and prescribed Lyrica. (Tr. 42.)

- He wakes up at night due to pain and numbness in his right wrist stemming from carpal tunnel syndrome. He does not have problems dropping things. (Tr. 43-44.)

- He was prone to sudden outbursts of anger and suffers crying spells on a daily basis. (Tr. 45.)

- He has not been treated by a psychologist or psychiatrist, but has received prescriptions for anti-depressants. (Tr. 47.)

- He had surgery on his left elbow, but it is still very tender and he has problems straightening his arm. (Tr. 49.)

No vocational or medical experts were called to testify.

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a

3

continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Marion was insured on his alleged disability onset date, July 5, 2005 and remained insured through December 31, 2010. (Tr. 9, 11.) Therefore, in order to be entitled to POD and DIB, Marion must establish a continuous twelve month period of disability commencing between July 5, 2005 and the date of the ALJ's decision. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

### IV. Summary of Commissioner's Decision

The ALJ found Marion established medically determinable, severe impairments due to deep venous thrombosis, chronic neck and back pain due to cervical spondylosis, multilevel degenerative changes, osteoarthritis, degenerative joint disease, fibromyalgia, bilateral knee pes bursitis, tendonitis, and bilateral elbow pain due to medical epicondylitis. (Tr. 11.) However,

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Marion was found capable of performing his past work activities, and was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the

Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

## VI. Analysis

Marion's Brief on the Merits, submitted *pro se*, does not clearly set forth recognizable assignments of error. However, it is well settled that "inartfully pleaded allegations in a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers." *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (internal quotation marks omitted) (*citing Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Further, allegations in *pro se* pleadings are entitled to "liberal construction" which sometimes requires "active interpretation ... to encompass any allegation stating federal relief." *Id*. As such, the Court construes Marion's brief as raising the following assignments of error: (1) the ALJ failed to consider or discuss medical treatment received from several sources; and, (2) the ALJ erred by ascribing more weight to the opinion of a non-examining than an examining physician.[2]

***Medical Sources***

Marion asserts that the following medical sources and their diagnoses were not listed or discussed by the ALJ: (1) Dr. Matthew Bertolini of the Glass City Injury & Rehab Center; (2) Dr. Charles Schwanger of Schwanger & Associates; (3) Dr. Carlos DeCarvalho; (4) Physiosource LTD; and (5) medical records from the United States Army. (Doc. No. 19.)

---

[2] Marion also complains that a number of his physicians do not recognize his problems. This Court does ***not*** conduct a *de novo* review (*i.e.* an entirely new review of the evidence). Moreover, neither the ALJ nor this Court possess the medical expertise that would justify second-guessing the medical conclusions of Marion's physicians. As such, the Court cannot address this complaint.

Upon review, it appears that none of the aforementioned documents are part of the record, save for a Questionnaire & Physical Therapy Records from Physiosource Physical Therapy.  (Tr. 715-722; Exh. 21F.)  The ALJ did not discuss these physical therapy notes which cover a two-month span in 2005.  However, an ALJ "need not discuss all evidence presented ... [though] she must explain why 'significant probative evidence has been rejected.'"  *Vincent v. Heckler*, 739 F.2d 1393, 1394-1395 (9th Cir. 1984) (finding it was not error to ignore evidence that was neither significant nor probative); *accord Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003); *see also Morris v. Sec'y of Health & Human Servs.*, 845 F.2d 326 (6th Cir. 1988) (A reviewing court "do[es] not require a written evaluation of every piece of testimony and evidence submitted.  However, a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position.")  There is nothing in these physical therapy records that is counter to the ALJ's determination, except for Marion's subjective pain complaints.  The ALJ conducted a pain analysis and found that while Marion's impairments could reasonably be expected to cause his alleged symptoms, his subjective complaints are unsupported by the record.  (Tr. 13.)  Moreover, the ALJ specifically discussed a functional capacity evaluation (Exhibit 2F) that suggested Marion was limited to less than sedentary work.[3]  (Tr. 13.)  As such, the ALJ clearly considered significant, probative evidence that benefitted Marion's position.  Her failure to discuss every piece of evidence, especially where such evidence is unremarkable, did not constitute error.

---

[3] The ALJ, however, did not give the functional capacity evaluation significant weight "because this assessment was conducted while the claimant's complaints were early on and more acute."  (Tr. 13.)

7

With respect to the treatment records cited by Marion that are not part of the record, the ALJ cannot reasonably be expected to consider sources that she has not seen.  In the Sixth Circuit, it is well established that Marion as the plaintiff – and not the ALJ – has the burden to produce evidence in support of a disability claim.  *See, e.g., Wilson v. Comm'r of Soc. Sec.*, 280 Fed. Appx. 456, 459 (6th Cir. May 29, 2008) (*citing* 20 C.F.R. § 404.15129(a)).  *See also Struthers v. Comm'r of Soc. Sec.*, 101 F.3d 104 (table), 1999 WL 357818 at *2 (6th Cir. May 26, 1999) ("[I]t is the duty of the claimant, rather than the administrative law judge, to develop the record to the extent of providing evidence of mental impairment."); *Landsaw v. Sec'y. of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant.  20 C.F.R. §§ 416.912, 416.913(d)."); *cf. Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010) (although an "ALJ has an inquisitorial duty to seek clarification on material facts," a plaintiff, who is represented by counsel, must provide a "factual record" relating to the length of his employment when his past work was part of the record and was the basis of the initial decision to deny benefits).  However, there is a special, heightened duty requiring the ALJ to develop the record when the plaintiff is "(1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures."  *Wilson*, 280 Fed. Appx. at 459 (*citing Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)).

The special duty requirement is not at issue in this case since Marion was represented by an attorney.  Thus, "the ultimate burden of proving disability" remained squarely on Marion.  *Wilson*, 280 Fed. Appx. at 459 (*citing Trandafir v. Comm'r of Soc. Sec.*, 58 Fed. Appx. 113, 115

8

(6th Cir. Jan. 31, 2003)); *see also Guy v. Astrue*, 2010 WL 1141526 at \*\*10-11 (M.D. Tenn. Mar. 4, 2010).

As such, Marion's first assignment of error is without merit.

### *Examining/Non-Examining Physician*

Marion seems to argue that the ALJ failed by ascribing greater weight to the opinion of a non-examining physician than to the opinion of an examining physician. "Generally, [the Social Security Administration] give[s] more weight to the opinion of a source who has examined [a claimant] than to the opinion of a source who has not ...." 20 C.F.R. § 404.1527(d)(1). Marion's brief summarizes his argument as follows:

> I go see (in person) a mental health doctor who says I have major mental issues after talking and see me for an hour, but someone else talks to me on the telephone and says I'm fine and Social Security believes them!

(Doc. No. 19.)

It is unclear exactly which opinions Marion is referencing. While Marion's *pro se* allegations are to be liberally construed, it is not the Court's function to comb through hundreds of pages of medical records to craft an argument that might resemble one Marion attempts to raise. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, No. 04-4175, 2006 U.S. App. LEXIS 11680 (6th Cir. May 11, 2006). As such, Marion's "argument" is deemed waived.

Moreover, Marion acknowledged that he had never received treatment from a psychiatrist

or psychologist. (Tr. 47.) However, on February 21, 2007, at the request of the Bureau of Disability Determination ("BDD"), Marion was seen by Karen Robie, Ph. D., a licensed psychologist for a mental status evaluation. (Tr. 589-92.) Dr. Robie noted that Marion's mood was euthymic, appropriate, and stable, his speech was within normal limits, and his thoughts were clear, goal-directed, and organized. (Tr. 591.) Nonetheless, Dr. Robie concluded that Marion was moderately to extremely limited in his ability to relate to others, including fellow workers and supervisors. (Tr. 592.) She also opined that Marion had moderate impairments in his ability to withstand the stress and pressures associated with day-to-day work, and to maintain attention to perform simple, repetitive tasks. *Id.* Dr. Robie clearly constitutes an examining, but non-treating source.[4]

On March 6, 2007, Alice Chambly, Psy. D., completed a Psychiatric Review Technique form. (Tr. 593-605.) Dr. Chambly found that Marion had mild limitations in his ability to maintain social functioning, but found no other limitations in the other three areas of functioning. (Tr. 603.) Dr. Chambly indicated that she gave considerable weight to the consultative examination of Dr. Robie, but did not accept all of Dr. Robie's conclusions "as they are not consistent with the objective evidence presented in the body of the consultative examination report." (Tr. 605.) On June 17, 2007, Carl Tischler, Ph. D., affirmed Dr. Chambly's assessment. (Tr. 712.)

---

[4] "A 'nontreating source' (but examining source) has examined the claimant 'but does not have, or did not have, an ongoing treatment relationship with' [him]." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007); *accord Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). Conversely, "[a] 'nonexamining source' is 'a physician, psychologist, or other acceptable medical source who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case.'" *Smith*, 482 F.3d at 875.

With respect to Marion's mental impairments, the ALJ did not find that they were severe. (Tr. 11.) The ALJ explained that "[w]hile a diagnosis for a depressive disorder elicited significant limitations on psychological consultative examination, there is no evidence otherwise of a significant mental health problem and it is frequently noted in treatment records that the claimant does not have any mental health problems." *Id*. Though Marion is correct that the ALJ ascribed more weight to Dr. Chambly's opinion, a non-examining source, than to Dr. Robie's opinion, the ALJ's decision to do so under these circumstances is not erroneous. The ALJ need not *always* give greater weight to an examining source, especially where, as here, an ALJ finds that a consultative examiner's opinion is unsupported by the record and/or is internally inconsistent. Although an ALJ is procedurally required to give good reasons in a decision for the weight given to a claimant's treating source, "this requirement *only* applies to treating sources" and not to non-treating examining sources. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d at 514 (emphasis added). Furthermore, Dr. Chambly's opinion was not only affirmed later by another mental health specialist, but is also supported by a treating physician, albeit a non-mental health specialist.[5] Finally, the ALJ expressly noted the dearth of any significant evidence of mental health problems in the record. As such, this Court cannot find that the ALJ's treatment of Dr. Robie's opinion violated any procedural requirements or was in any way unreasonable given the evidence of record. Therefore, Marion's assignment of error is rejected.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by

---

[5] Dr. Abusamieh, a treating physician who saw Marion for treatment of pain associated with arthritis, opined on February 2, 2007, that "[t]here is certainly no mental or psychological impairment." (Tr. 567.)

substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

  IT IS SO ORDERED.

                <u>/s/ Greg White</u>
                U.S. Magistrate Judge

Date: November 30, 2010.